# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PETER ACKERMAN and JOANNE LEEDOM-ACKERMAN,<br><br>        Plaintiffs,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>        Defendant. | Civil Action 08-00279  (HHK)<br>Civil Action 08-00722  (HHK)<br>Civil Action 08-01136  (HHK) |

## MEMORANDUM OPINION

Plaintiffs Peter Ackerman and Joanne Leedom-Ackerman, husband and wife, bring these actions against the United States of America for refund of (1) income tax (*Ackerman I*, Civil Action 08-00279); (2) accuracy-related penalties (*Ackerman IV*, Civil Action 08-01136); and (3) failure-to-pay penalties (*Ackerman III*, Civil Action 08-00722), all for tax years 1997 through 2003, and all allegedly erroneously assessed under the Internal Revenue Code ("I.R.C.").  The United States has moved to dismiss *Ackerman I* and *Ackerman IV*, and moved for partial dismissal of *Ackerman III*.  Upon consideration of the motions, the opposition thereto, and the record of these cases, the Court concludes that the United States' motions for dismissal and partial dismissal should be granted.

## I.  BACKGROUND

### A.    Brief Background

This case arises largely under the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), which changed the way that the Internal Revenue Service ("IRS") audits

partnerships.  A partnership is not a taxable entity for federal income tax purposes; instead it is treated as a conduit through which income passes to partners who are then responsible for reporting and paying taxes on this income in their individual returns.  Prior to TEFRA, when the IRS sought to audit taxes owed from partnership income, it audited individual partners, rather than partnerships.  This, however, proved to be unworkable and inefficient.  In TEFRA, Congress authorized the IRS to conduct partnership-level audits to determine the proper tax treatment of items related to the partnership (such as deductions or credits).  If the audit results in an adjustment (such as if the IRS determines that a certain deduction or credit was improperly claimed), the IRS will subsequently assess all of the individual partners for taxes owed based on the adjustment to that particular item.  Under TEFRA as originally enacted, penalties were not considered during the partnership-level audit, but were considered during individual partner assessments.  In 1997, Congress passed the Taxpayer Relief Act, which made changes to the TEFRA provisions, most notably for this case authorizing the IRS to consider and assess penalties during the partnership-level audit.

This cases arises from a TEFRA proceeding.  In this case, the Ackermans' trust was a partner in a partnership that was audited by the IRS.  Following the audit, the IRS determined that the partnership had incorrectly claimed capital losses, and that these losses should be adjusted and penalties should be applied.  Thereafter, it issued a notice to the Ackermans setting forth the changes in their tax liability resulting from the adjustment and from the penalties.  The Ackermans allege that the IRS made computational errors in applying the adjustment to them and also assert partner-level defenses, such as good faith and reasonable cause, to the penalties, and so filed claims with the IRS disputing their tax liability.  Because the IRS has not responded to

these claims, the Ackermans filed suit in this Court for refunds due to allegedly erroneously assessed taxes.

**B.      Factual Background**

Santa Monica Pictures, LLC ("SMP") was formed as a limited liability company (which is treated as a partnership for tax purposes) and subsequently Somerville S Trust, the Ackermans' trust, was admitted as a partner.  The IRS audited SMP and issued a final partnership administrative adjustment disallowing certain capital losses claimed by SMP, and assessing a forty percent accuracy-related penalty for gross valuation misstatements.  SMP subsequently filed a Petition in Tax Court challenging the adjustments and a trial was held.  The Tax Court issued an opinion sustaining the disallowance of losses and the imposition of the accuracy-related penalties.  SMP then appealed the Tax Court's decision to the Second Circuit Court of Appeals.

In the meantime, on January 18, 2006, following the Tax Court's decision, the IRS sent the Ackermans a letter and forms stating that the Ackermans' tax returns were adjusted in accordance with the Tax Court decision and setting forth the Ackermans' total liability for tax, penalties, and interest after the adjustment.  The total amount due was over $150 million dollars. The letter stated that the IRS had not had time to secure the Ackermans' actual tax returns for several years before sending the letter and forms and that, after it did, it would reconsider its tax assessment and, if it discovered that the Ackermans owed additional tax and/or penalties, send another billing notice.

The Ackermans sent several letters to the IRS following the January 18, 2006 adjustment. On February 21, 2006, they sent a letter challenging the accuracy of the IRS's computational adjustments and requesting that the IRS adjust its computations.  On March 28, 2006 and August

3

16, 2006, they sent supplemental letters with supporting materials and supplemental requests for corrections to the computational adjustments.  Beginning in August 2006, the Ackermans also tried to contact the IRS by telephone, over thirty times, but the IRS never responded other than to acknowledge receipt of their letters.  During this time, the Ackermans requested and obtained a "freeze" on collection of the adjusted amounts.  Nevertheless, the Ackermans made three payments to the IRS on April 26, 2006, October 19, 2006, and October 23, 2006, which together paid the total amount owed according to the January 2006 letter plus failure-to-pay (i.e. late payment) penalties.

Subsequently, on May 3, 2007, SMP and the United States reached an agreement to settle the SMP appeal pending in the Second Circuit Court of Appeals.  The agreement cut the SMP's, and thus the Ackermans', tax liability by twenty percent across the board, and on June 29, 2007, the IRS issued the Ackermans a Notice of Adjustment reflecting the adjustment to their tax liability resulting from the settlement agreement.  The IRS also issued checks to the Ackermans for the relevant refund amounts.

On September 4, 2007, the Ackermans filed a claim with the IRS for refund of the failure-to-pay penalties, which were applied when the Ackermans did not timely pay their January 2006 tax bill.  On October 10, 2007, they filed a claim with the IRS for refund of the accuracy-related penalties, asserting partner-level defenses of reasonable cause and good faith. Because the IRS did not deny these claims or the Ackermans' prior computational adjustment claim within six months of their being filed, the Ackermans were entitled to file suit; they filed the instant suit to recover these taxes and penalties.

## II.  ANALYSIS

The United States moves to dismiss *Ackerman I* and *IV* arguing that the Ackermans did not "duly file" their refund claims relating to their requests for computational adjustments (*Ackerman I*) and their challenge to the accuracy-related penalties (*Ackerman IV*), and therefore this Court lacks subject matter jurisdiction over these claims.  The United States further argues that, with respect to the Ackermans' refund claim relating to their challenge to the failure-to-pay penalties (*Ackerman III*), this Court lacks jurisdiction for several taxable years because the Ackermans chose to proceed in Tax Court for those years.

## A.      Standard of Review

The Ackermans argue that while the United States fails to state the federal rule underlying its motion to dismiss, they assume it is a Fed. R. Civ. P. 12(c) motion for judgment on the pleadings because it was filed after the close of the pleadings.  Under Rule 12(c), the Ackermans contend, the Court must accept their allegations, as the nonmoving party, and view the facts in the light most favorable to them.  The United States rejoins that because the Ackermans invoke federal jurisdiction, they bear the burden of establishing it.  The United States further argues that in determining whether it has jurisdiction, the Court is not limited to the pleadings but may review or accept any evidence and may resolve disputed facts.

Because the United States filed an answer before its motion to dismiss, the Court will treat its motion as a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).  "A defendant may use a rule 12(c) motion after the close of the pleadings to raise various rule 12(b) defenses regarding procedural defects, in which case courts apply the same standard applicable to the corresponding 12(b) motion."  *Lenox Hill Hosp. v. Shalala*, 131 F. Supp. 2d

136, 140 n. 4 (D.D.C. 2000) (quoting *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993)).  Here, the United States argues that this Court lacks subject matter jurisdiction over the Ackermans' claims.  Therefore, the Court will analyze the motion under the same standards as it would a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction.

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Because "subject-matter jurisdiction is an 'Art. III as well as a statutory requirement[,] no action of the parties can confer subject-matter jurisdiction upon a federal court.'"  *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxite de Guinea*, 456 U.S. 694, 702 (1982)).  On a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of establishing that the court has subject matter jurisdiction.  *Rasul v. Bush*, 215 F. Supp. 2d 55, 61 (D.D.C. 2002) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1936)), aff'd, *Al Odah v. United States*, 321 F.3d 1134 (D.C. Cir. 2003).  The court must treat the complaint's factual allegations – including mixed questions of law and fact – as true, drawing all reasonable inferences in the plaintiff's favor.  *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003).  On a 12(b)(1) motion, however, a court may properly go beyond the pleadings and consider facts evidenced in the record without converting the motion into one for summary judgment.  *See Herbert v. Nat'l Academy of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992).

**B.**     *Ackerman I* **- Claim for Refund Based on Computational Errors**

*Ackerman I* relates to the Ackermans' claim that the IRS made computational errors in

applying the SMP decision to them.  The Ackermans claim a refund due to the allegedly

erroneous assessment.  The critical question in *Ackerman I* is whether the Ackermans "duly

filed" their refund claim with the IRS.  If not, this Court lacks subject matter jurisdiction.  All

parties agree that to "duly file" their refund claim, the Ackermans had to file it according to the

requirements of I.R.C. section 6230(c), and so the sole question before the Court is whether they

did so.

The United States argues that section 6230(c) required the Ackermans to pay and then file

a claim for a refund, both within 60 days of receiving the notice of computational adjustment.

Because the Ackermans first filed their refund claims (within the sixty days) and *then* paid their

tax liability (making their first payment within the sixty days, but paying the balance after the

sixty days), the United States argues that this Court lacks jurisdiction.  The Ackermans dispute

that there is any requirement of full payment before filing an administrative claim with the IRS,

arguing that the full payment requirement only applies before filing suit in federal court, and not

before filing an administrative claim.  The Ackermans further argue that the United States should

be estopped from moving to dismiss on the basis that the claim was not "duly filed" because the

United States never indicated during the administrative process that the Ackermans' claims were

deficient.

TEFRA claims are subject to the general jurisdictional requirements of section 7422(a) or

the I.R.C., which requires that before proceeding to federal court, a taxpayer must "duly file[]

with the Secretary" a "claim for refund," "according to the provisions of law in that regard, and

7

the regulations of the Secretary established in pursuance thereof." 26 U.S.C. § 7422(a); *see*

*Whittington v. United States*, 380 F. Supp. 2d 806, 812 (S.D. Tex. 2005). Section 7422 addresses

the specific jurisdictional requirements in TEFRA proceedings in section (h), which directs that

"[n]o action may be brought for a refund attributable to partnership items . . . except as provided

in section 6228(b) or section 6230(c)." 26 U.S.C. § 7422(h). Section 6230(c)(1) of the I.R.C.,

the relevant provision in this case, is entitled "Claims arising out of erroneous computations,

etc." and states:

> **(1) In general.** – A partner may file a claim for refund on the grounds that –
>    (A) the Secretary erroneously computed any computational adjustment
>    necessary –
>        ***
>        (ii) to apply to the partner a settlement, a final partnership
>        administrative adjustment, or the decision of a court in an action
>        brought under section 6226 or section 6228(a) [such as the Tax
>        Court decision here],
>        ***
> **(2) Time for filing claim.** –
>    (A) Under (1)(A) or (C). – Any claim under subparagraph (A) or (C) of
>    paragraph (1) shall be filed within 6 months after the day on which the
>    Secretary mails the notice of computational adjustment to the partner.

26 U.S.C. § 6230(c). This provision unambiguously requires the Ackermans to file a claim for a

refund within six months after they received the notice of computational adjustment, i.e. by July

18, 2006.

The critical question in this case is whether the term "claim for refund" requires that

payment be made before the claim is filed. The United States argues that it does. The United

States contends that the pay-first requirement derives from the word "refund," which by

definition requires the taxpayer to have already paid. The United States asserts that this plain

meaning is reinforced when contrasted with the innocent spouse provisions of section 6230,

which contain different statutes of limitations depending upon whether the innocent spouse has paid and is filing a claim for a refund, or has not paid and is filing a claim for an abatement.  The Ackermans disagree.  They argue that section 6320(c) does not overtly state a pay-first requirement and that the United States cites no case so requiring, but instead points to cases arising under another section of the I.R.C., section 6511.  Claims filed before payment, they assert, may be considered claims for a refund.  Moreover, a pay first then file requirement is not practical, according to the Ackermans, where the period in which a taxpayer may file a claim is only six months, a period of time too short to satisfy big tax bills like the one at issue in this case.

The Court concludes that the term "claim for refund" requires that payment be made before a claim is filed.  First, common sense dictates that a person cannot request a "refund" when the entity to which she makes her request does not have her money.  Second, IRS regulations, which section 7422 requires a taxpayer to follow to "duly file[]" a "claim for refund," 26 U.S.C. § 7422(a), state that "*[a]fter* payment of the tax, a taxpayer may, within the applicable period of limitations, contest the assessment by filing with the district director a claim for refund of all or any part of the amount paid . . . ."  *See* 26 C.F.R. § 601.103 (emphasis added).

This interpretation is also supported by the relevant case law.  Although the parties cite no case, and the Court has found none, which addresses whether a taxpayer must pay first in order to file a claim for refund under section 6230(c), courts have found with regard to section 7422 of the I.R.C., governing refund claims generally, that the taxpayer must have paid first.  *See In re Long Distance Tel. Serv. Fed. Excise Tax Refund Litig.*, 539 F. Supp. 2d 281, 290 (D.D.C. 2008) ("[t]he claim must be filed timely:  after the tax has been paid, but before the expiration of the time for filing . . . .") (internal citations omitted); *see also Canterna v. U.S. Dep't of*

9

*Treasury*, 2003 WL 22753566, at *4 (W.D. Pa. October 1, 2003) ("It is axiomatic that a claim for

a refund presupposes that the tax and interest have been paid.") (Sensenich, Mag. J.); *Malkin v.*

*United States*, 3 F. Supp. 2d 493, 498 (D.N.J. 1998) (holding that the court did not have

jurisdiction because a plaintiff's claim for a refund was not duly filed where the plaintiff had not

paid her liability until after filing her administrative claim); *Nelson v. United States*, 727 F. Supp.

1357, 1358 (D. Nev. 1989) ("[u]ntil the entire tax was paid, the claim could not be duly filed, and

it is undisputed that no claim was filed after complete payment"); *Tichman v. United States*, 1979

WL 1388, at *1 (S.D.N.Y. June 5, 1979) ("Since there can be no valid claim for refund until after

the payment of the tax in question, any claim for refund made prior to payment of the tax is not

'duly filed.'") (internal citation omitted).

  The Ackermans' argument that these cases are inapplicable because they arose out of the

requirements for filing claims found in section 6511 instead of the requirements found in section

6230 is unconvincing.  The Ackermans argue that the requirements of section 6511 are different

because they specifically designate payment as one of the times from which the statute of

limitations may run.  While section 6511 does use payment as one possible trigger from which

the statute of limitations may run, this provision does not directly speak to the question of

whether payment must be made before a claim may be "duly filed."  The only explicit

requirement that payment be made before filing a claim under section 6511 is its language that

the taxpayer must file a "claim for credit or refund of an overpayment," language that is similar

to that in section 6230(c).  *Compare* 26 U.S.C. § 6511(a) ("Claim for credit or refund of an

overpayment of any tax . . . shall be filed by the taxpayer within 3 years from the time the return

was filed or 2 years from the time the tax was paid, whichever period expires the later . . . .")

*with* 26 U.S.C. § 6230(c) ("A partner may file a claim for refund . . . within 6 months after the day on which the Secretary mails the notice of computational adjustment to the partner."). Additionally, the Ackermans' argument that section 6511 is different from section 6230 because section 6511 uses the term "[c]laim for credit or refund of an overpayment of any tax," while section 6230 uses the term "claim for refund" is unpersuasive. The Court does not see how the term "overpayment" changes the meaning of the term "refund." Moreover, the majority of the cases cited by the Court interpret section 7422's requirement that a claim for refund be "duly filed," a requirement that applies equally to claims under section 6511 and section 6230.

The cases the Ackermans cite for the proposition that a taxpayer need not pay first are either inapposite or fail to convince the Court. The Ackermans cite *King v. United States*, 949 F. Supp. 787 (E.D. Wash 1996) for the proposition that under section 7422 a taxpayer does not have to pay in full before filing an administrative claim, but on appeal in the Ninth Circuit, the plaintiffs asserted that they had satisfied the pay-first requirement through forfeiture. *See King v. United States*, 152 F.3d 1200, 1201 (9th Cir. 1998) ("they paid the tax due both before and after they filed their administrative claim for refund"). Similarly, in *United States v. Kale*, cited by the Ackermans, the court states that the plaintiff paid and lodged a written protest "[a]t the same time." 314 U.S. 186, 190 (1941). Finally, when *Levitsky v. United States*, 27 Fed. Cl. 235, 241 n.6 (Fed. Cl. 1992), cited by the Ackermans, states that the Court of Federal Claims has sustained informal claim theories including a written protest prior to payment, it is referring to *Newton v. United States*, 163 F. Supp. 614, 619 (Ct. Cl. 1958), in which the Court of Federal Claims did sustain such a claim but wholly without discussion of the issue of whether payment was due before a claim was filed.

Moreover, the United States correctly points out that the structure of section 6230 suggests that Congress purposely used the term "claim for refund" in section 6230(c). In that same section, Congress directs that a person claiming innocent spouse relief may file a "request for abatement" within sixty days after a notice of computational adjustment is mailed, 26 U.S.C. § 6230(a)(3), but may file a "claim for refund" within six months after the notice is mailed, *id*. at § 6230(c)(5). It is unlikely, therefore, that Congress did not intend "claim for refund" when it wrote "claim for refund" in section 6230(c).

The Ackermans' equitable argument that the United States did not indicate any deficiencies in their claim during the administrative process and thus should be held to that position in federal court is unavailing. First, the United States correctly points out that the court's application of estoppel requires a definite representation and reasonable reliance on that representation to a person's detriment. *See Graham v. SEC*, 222 F.3d 994, 1007 (D.C. Cir. 2000). Here, there is no evidence that the United States made any representation to the effect that the Ackermans' filings were procedurally proper. Second, the Ackermans' citations to *Niagara Mohawk Power Corp. v. United States*, 525 F.2d 1380 (Ct. Cl. 1975) and *Brown v. United States*, 427 F.2d 57 (9th Cir. 1970) are inapposite. In those cases, the court held that where the United States brought up a new defense in court, the plaintiffs could litigate that new issue even if the plaintiffs had not raised it during the administrative process. That is very different from the proposition the Ackermans attempt to cite it for, that where the United States fails to inform a taxpayer of a deficiency in her claim, the United States cannot use that deficiency as a defense in federal court. Accordingly, the Court grants the United States' motion to dismiss *Ackerman I*.

12

**C.**     *Ackerman IV* **- Claim for Refund Based on Accuracy-Related Penalties**

*Ackerman IV* is the Ackermans' claim for a refund based on the accuracy-related penalties assessed during the SMP partnership-level proceeding and applied to them through the notice of adjustment.  Accuracy-related penalties are imposed when a taxpayer substantially understates her income tax on her return.  The Ackermans argue that this penalty was erroneously assessed, stating that there was reasonable cause for the understatement accompanied by good faith.  There are two principal questions before the Court in its resolution of *Ackerman IV*.  First, in order to "duly file" their refund claims with the IRS, did the Ackermans need to proceed under section 6511 (with its two or three year filing deadline which they did meet) or section 6230 (with its sixty day filing deadline which they may not have met)?  Second, if the Ackermans were required to proceed under section 6230, which of two letters sent on different dates constitutes the notice of adjustment from which the clock began to run?

> ***i.  Did the Ackermans need to proceed under section 6511 or section 6230 to "duly file" their refund claim?***

The United States argues that while the Ackermans plead their *Ackerman IV* claim under section 6511(a) of the I.R.C., in reality, the only claim for which Congress has waived sovereign immunity is one under section 6230(c)(1)(C).  Under section 6230(c)(1)(C), the United States contends that the Court does not have subject matter jurisdiction because the Ackermans did not pay their deficiency or file a refund claim within six months of receiving the notice of adjustment as required by section 6230(c)(2)(A).  The Ackermans rejoin that section 6230(c)(1)(C) does not apply to their claim for a refund related to accuracy-related penalties and that, instead, section 6511(a) applies.

Section 6511 provides the general requirements for filing a tax refund claim.  It provides: "Claim for credit or refund of an overpayment of any tax imposed by this title . . . shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later . . . ."  26 U.S.C. § 6511(a).  Section 6230 provides the requirements for filing a refund claim under TEFRA and provides: "A partner may file a claim for refund on the grounds that . . . the Secretary erroneously imposed any penalty . . . which relates to an adjustment to a partnership item.  [Such] claim shall be filed within 6 months after the day on which the Secretary mails the notice of computational adjustment to the partner." *Id*. § 6230(c).  The I.R.C. directs that claims for a refund "attributable to any partnership item" must be brought under section 6230(c) (and not section 6511(a)) in at least two places.  *See* 26 U.S.C. § 7422(h) ("No action may be brought for a refund *attributable to partnership items . . .* except as provided in . . . section 6230(c)"); *id*. § 6230(d)(6) (Section 6511 "shall not apply to any credit or refund of an overpayment *attributable to a partnership item*.") (emphases added).

Accordingly, the question before the Court is whether the accuracy-related penalty applied to the Ackermans is "attributable to a partnership item."  The I.R.C. defines a partnership item as:

> any item required to be taken into account for the partnership's taxable year under any provision of subtitle A [income taxes] to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level.

26 U.S.C. § 6231(a)(3).  The IRS regulations provide a list of items that are required to be taken into account for the taxable year of a partnership including "[i]tems of income, gain, loss, deduction, or credit of the partnership."  26 C.F.R. § 301.6231(a)(3).  The I.R.C. also defines an

14

"affected item," another important term in this dispute, as "any item to the extent such item is affected by a partnership item." 26 U.S.C. § 6231(a)(5). The IRS regulations specifically note that an accuracy-related penalty is an affected item. *See* 26 C.F.R. § 301.6231(c)(5)-1(e)(4) (Example 1). Thus, the question is whether an affected item may be "attributable to a partnership item" within the meaning of the I.R.C.

The Ackermans argue that accuracy-related penalties are not attributable to partnership items and construct a relatively complicated argument in support of this contention. First, the Ackermans argue that penalties subject to partner-level defenses (such as reasonable cause or good faith) are "affected items" and not "partnership items" because they are, by definition, not "required to be taken into account for the partnership's taxable year." Second, they assert that not all affected items are equal, creating a distinction between computational adjustments, which do not require an analysis of substantive facts, and accuracy-related penalties, which do require an analysis of substantive facts regarding the individual partner and are thus "substantive affected items."

Third, the Ackermans contend that the 1997 Taxpayer Relief Act made clear that while individual claims related to computational adjustments must proceed under section 6230(c), substantive affected items, such as accuracy-related penalties, would continue to proceed under the general refund provision, section 6511. As support for this argument, the Ackermans point to the plain language of section 6230(c), which is titled, "Claims arising out of erroneous computations, etc," *see* 26 U.S.C. § 6230(c), and argue that through this language, Congress indicated that the refund provisions of section 6230(c) were limited to claims related to computational adjustments. The Ackermans also point to the change that Congress made to

section 6230(d)(6) in the 1997 Taxpayer Relief Act.  While prior to 1997, section 6230(d)(6)

excluded from section 6511(a) "any credit or refund of an overpayment attributable to a

partnership item (or an affected item)," post-1997, section 6230(d)(6) only excluded from section

6511(a) "any credit or refund of an overpayment attributable to a partnership item."  The

Ackermans further point to case law, and in particular *Field v. United States*, 328 F.3d 58, 59 (2d

Cir. 2003), which holds that the refund provisions of section 6230(c) do not apply to "affected

items."

 The United States concedes that accuracy-related penalties are affected items, but argues

that claims for refund of certain affected items, including accuracy-related penalties, are

"attributable to partnership items" and subject to the six month statute of limitations in section

6230(c)(2) because of the changes wrought by the 1997 Taxpayer Relief Act.  Prior to 1997, the

United States explains, penalties were not addressed at the partnership level, but instead were

addressed at the individual partner level following a partnership audit, and were not governed by

the requirements of section 6230.  In the 1997 Taxpayers Relief Act, however, Congress

authorized the partnership-level proceeding to include penalties, adding "and the applicability of

any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership

item" to the list of those things to be determined at the partnership level.  At the same time, the

United States asserts, Congress added section 6230(c)(1)(C) to provide a partner-level refund

forum for claims relating to such penalties.  This amendment, the United States argues, renders

all of the Ackermans' citation to pre-1997 law irrelevant.

 The question before the Court is whether the Ackermans' claim for a refund based on

their partner-level defenses to the accuracy-related penalties applied to them through the

partnership-level proceeding is "attributable to any partnership item."  This appears to be a

question of first impression.  This Court holds that it is.

    The Ackermans' claim for refund of alleged overpayments of their accuracy-related

penalties are "attributable to a partnership item" within the natural meaning of that clause.  The

accuracy-related penalty exists because of an adjustment (the IRS's disallowance) to a

partnership item (capital loss).  In other words, the penalty derives directly from the adjustment

which derives directly from the partnership item.  Therefore, the claim is attributable to the

partnership item.[1]

    This conclusion is supported by the language and structure of TEFRA, as amended by the

Taxpayer Relief Act, which indicates Congress's intent that claims for refunds related to

accuracy-related penalties, such as the Ackermans', be brought under subsection 6230(c)(1)(C).[2]

Section 6221 states that the applicability of any penalty shall be determined at the partnership

level.  26 U.S.C. § 6221.  Section 6230(c) in turn creates an authorization for partners to file a

---

[1]  The Court notes that in their *Ackerman III* argument, the Ackermans appear to concede this point.  While addressing another section of the code, section 6512(a), which refers to "overpayments attributable to partnership items," the Ackermans state that "[t]he items determined in the SMP Case, a partnership-level proceeding, are partnership items," and that "[t]he SMP case determined the application of accuracy-related penalties against the partnership. . . ."  Therefore, the Ackermans conclude, their "claims for refund are for overpayments that resulted from adjustments to [their] tax liabilities made in accordance with the SMP Case . . . and thus qualify under the 6512(a)(4) exception as 'attributable to partnership items.'"  Pls.' Opp. at 49-50.  While the Ackermans try to draw a distinction between section 6512(a), discussed further in section D of this memorandum, and the language of 7422(h) because the former relates to "overpayments attributable to partnership items" and does not reference the definition of "partnership items" in the code, while the latter relates to a "refund attributable to partnership items (as defined in section 6231(a)(3))," the Court finds these distinctions unpersuasive.

[2]  Because section 6230(c)(1)(C) is a permissive provision, as opposed to a bar on bringing the claim under other provisions, it is discussed here only with respect to an analysis of Congressional intent.

claim for a refund on the grounds that the Secretary erroneously imposed any penalty on an

individual partner.  *Id*. § 6230(c)(1).  Section 6230 also imposes a six month time limit for filing

such a claim, *id*. § 6230(c)(2), authorizes a party to file suit in federal court of its claim for a

refund is rejected, *id*. § 6230(c)(3), and limits what the IRS or a court may consider when

determining whether a claim for a refund should be granted, *id*. § 6230(c)(4).  This structure

suggests that Congress intended to add penalties into the TEFRA partnership proceeding both in

terms of the initial determination of their applicability and the determination of any claim for a

refund.[3]

While the Ackermans argue that subsection 6230(c)(4) demonstrates that a taxpayers'

refund claim that is based on an individual defense does not proceed under section 6230, the

Court concludes that it demonstrates the opposite.  Section 6230(c)(4) provides:

> For the purposes of any claim or suit under *this subsection* . . . the determination
> under the final partnership administrative adjustment . . . concerning the
> applicability of any penalty . . . which relates to an adjustment to a partnership
> item shall be conclusive.  Notwithstanding the preceding sentence, the partner
> shall be allowed to assert any partner level defenses that may apply or to challenge
> the amount of the computational adjustment.

*Id*. § 6230(c)(4) (emphasis added).  This subsection clearly contemplates that an individual

partner would bring a claim for a refund concerning the applicability of a penalty *under this*

*subsection*, i.e. under subsection 6230(c).  While the Ackerman's argue that their claim for a

refund is governed by section 6511 because they can assert a partner-level defense, subsection

---

[3]    The Court's position is supported by one of the only cases interpreting section
6230(c)(1)(C), which states, that section 6230(c)(1)(C) is the "explicit statutory provision . . .
that preserve[s] partner level defenses for proceedings subsequent to disposition of a
readjustment petition." *Long Term Capital Holdings v. United States*, 330 F. Supp. 2d 122, 198
(D. Conn. 2004).

6230(c) specifically provides for such defenses, stating that determinations relating to partnership items made during the final administrative adjustment will be conclusive but that in a claim for a refund under subsection 6230(c), the IRS or a court may consider such partner-level defenses without being bound by the final administrative adjustment.

The Ackermans put forward an alternative construction of this section and argue that section 6230(c)(1)(C) applies only to a claim for a computational adjustment relating to the imposition of a penalty (i.e. if there is a computational error and adjustment under 6230(c)(1)(A), then a penalty, dependent on the amount of the deficiency, may also be adjusted). The Ackermans point to the title of subsection 6230(c), "Claims arising out of erroneous computations, etc." as support for their argument. The language of 6230(c)(1)(C), however, is not so limiting. Section 6230(c)(1)(C) authorizes a claim for a refund on the grounds that "the Secretary erroneously imposed any penalty . . . which relates to an adjustment to a partnership item," and not that the Secretary erroneously computed a penalty. Had Congress meant to so limit the provision, it could have added "computational" before "adjustment." Instead, subsection 6230(c)(1)(C) covers any penalty erroneously imposed that relates to an adjustment to a partnership item. An adjustment to a partnership item may be, as in this case, an adjustment to the amount of capital loss a partnership is permitted to claim. Importantly, the Ackermans' construction would leave subsection 6230(c)(1)(C) devoid of any import because a claim for a refund of an erroneously computed accuracy-related penalty would already be authorized under subsection 6230(c)(1)(A).

The Court acknowledges that its interpretation runs counter to some existing case law pointed to by the Ackermans. For example, in *Field v. United States*, the Second Circuit held

that the plain meaning of "attributable to a partnership item" in section 7422(h) means that "the refund (not the item which leads to that refund) must be attributable to partnership items."  328 F.3d 58, 59 (2d Cir. 2003).  The court in that case rejected the proposition that "attributable to partnership items" might mean "directly flow[ing] from a partnership item."  *Id*. at 60.  Similarly, other cases recognize a distinction between those things attributable to partnership items and those things attributable to affected items.  *See, e.g.*, *McBride*, 146 F. Supp. 2d at 1108  ("The question before the Court is whether the refund is for taxes attributable to TEFRA partnership items or if the refund is for taxes attributable to 'affected' items determined at the partner, not the partnership, level."), *aff'd*, 2002 WL 1491894, at *1 (9th Cir. July 12, 2002).  The Court, however, agrees with the United States that the 1997 Taxpayer Relief Act fundamentally reshaped the distinction between partnership-level partnership items and partner-level affected items.

The 1997 Taxpayer Relief Act amended the I.R.C. to include the application of penalties at the partnership level in section 6221.  Pub. L. 105-34 § 1238(a); *see* 26 U.S.C. § 6211.  At the same time, the Act added section 6230(c)(1)(C) authorizing a partner to file a claim for a refund on the grounds that "the Secretary erroneously imposed any penalty . . . which relates to an adjustment to a partnership item."  *Id*. § 1238(b)(4).  In the legislative history, the conference committee wrote:  "The House bill provides that partnership-level proceeding is to include a determination of the applicability of penalties at the partnership level.  However, the provision allows partners to raise any partner-level defenses in a refund forum."  H.R. Conf. Rep. 105-220 at 685.  The legislative history suggests that Congress intended to add penalties to TEFRA audit,

both in terms of their application during the partnership-level process and the application of the TEFRA refund provision to them.

The amendments to TEFRA worked by the Taxpayer Relief Act thus acknowledged that penalties are not solely partner-level affected items, but may be considered and determined at the partnership level. This renders the holdings of *Field* and *McBride* less relevant because those cases relied on the fact that "affected items" could not be reviewed at the partnership level. *See Field*, 328 F.3d at 60 ("interest is an 'affected item' . . . rather than a 'partnership item' and therefore could not be reviewed at a partnership level proceeding."); *McBride*, 146 F. Supp. 2d at 1108 ("taxes attributable to 'affected' items determined at the partner, not partnership, level."). Such a distinction is also supported by *Keener v. United States*, 76 Fed. Cl. 455, 468-69 (Fed. Cl. 2007), which recognized that affected items may have both a partnership prong and a non-partnership prong. The *Keener* court concluded that an affected item that has a partnership prong that must be determined at the partnership level is "attributable to a partnership item." *Id*. at 469. Similarly, this Court concludes that accuracy-related penalties, which must be determined at the partnership level pursuant to section 6221, are "attributable to a partnership item."

Perhaps the strongest argument presented by the Ackermans is that Congress did not intend the six month limitation in 6230(c)(2)(A) to apply in the case where there is a partner-level defense that is dependent on a factual analysis related to that partner, such as whether she can make out a reasonable cause or good faith defense. The Ackermans point to a great deal of case law supporting a distinction between affected items that require individual factual analysis and therefore, according to them, fall under section 6511, and affected items that do not require such individual factual analyses, such as erroneous computational adjustments, that fall under

section 6230(c).  The case law they cite, however, pre-dates the 1997 Taxpayer Relief Act and

the addition of penalties to the TEFRA proceedings.  It is also contradicted by the plain language

of section 6230(c)(1)(C), which, as discussed above, is not so limiting.  Ultimately, the Court

concludes the United States' interpretation is more persuasive, and that the Ackermans must have

duly filed a refund claim under section 6230(c).[4]

### ii.  Does the first or second letter start the clock?

The Ackermans argue that, even assuming that the six-month statute of limitations of

6230(c)(2)(A) applies, they still met this limitation because they filed their claim within six

months after the revised computations and notice of adjustment were issued by the IRS in June

2007.  The January 2006 forms, they assert, stated that they were estimates based on incomplete

calculations, and pursuant to settlement discussions relating to the SMP appeal, the IRS issued a

series of revised computations on June 26, 2007 and a Notice of Adjustment on June 29, 2007.

Section 6230(c)(2), they contend, does not state that there is only one operative notice of

computational adjustment or that the statute of limitations runs from the first.  They assert that

courts have held that under section 6532(a)(1), a similar provision, a second notice may begin a

new limitations period.  In addition, the Ackermans argue that the United States should be

estopped from arguing that their claim is untimely because the January 2006 forms stated they

were an estimate, induced the Ackermans' expectation of a revised notice, and encouraged them

to delay filing.

---

[4]  The Ackermans further argue that where a substantial question exists as to which of
two conflicting statutes of limitations should apply, the court should apply the longer one.  The
United States responds that no substantial question exists here.  The Court agrees with the United
States.

The United States rejoins that the June 2007 notice does not apply because the statutory language is "*the* notice of computational adjustment." The United States argues that the Ackermans had the choice to post a bond, thus staying the assessment against them until resolution of the settlement, but chose not to, and that the settlement in no way interfered with the assertion and consideration of the Ackermans' administrative claim. The June 2007 notice of adjustment, they contend, only briefly explained the calculations relevant to the application of the settlement (and accompanying refund), and did not correct the earlier notice, constitute a reconsideration of a prior IRS action, or include any new error that improperly reduced the amounts being refunded to them from which the Ackermans could make a claim of error. The United States further argues that the Ackermans fail to make a case for estoppel because they fail to provide evidence that they delayed payment because the January 2006 notice was an estimate, because they did file their *Ackerman I* claims without waiting for a revised notice, and because no clear representation was made by the United States. The United States is correct.

Section 6230(c) creates a refund mechanism for claims "on the grounds that . . . the Secretary erroneously imposed any penalty . . . which relates to an adjustment to a partnership item." 26 U.S.C. § 6230(c)(1). Any such claims must be filed "within 6 months after the day on which the Secretary mails the notice of computational adjustment to the partner." *Id*. § 6230(c)(2)(A). The Ackermans' refund claim "on the grounds that . . . the Secretary erroneously imposed any penalty" arises from the January 2006 notice of computational adjustment. It is that notice that alerted the Ackermans that the United States intended to apply a penalty to them, a penalty for which they argue they have a partner-level defense. The June 2007 notice, on the other hand, merely documented a refund to the Ackermans on the basis of SMP's settlement with

23

the United States.  The June 2007 notice did not impose any new penalty, and the Ackermans'

claim for a refund on the grounds that the Secretary imposed any penalty against them does not

arise from the June 2007 notice.  The Ackermans do not challenge the application of the

settlement agreement to them in this case.  Therefore, the January 2006 notice is the operative

notice.

    The Ackermans' estoppel argument fails because there was no clear representation, or

promise, by the United States on which the Ackermans relied in delaying the filing of their

refund claims.  Nowhere in the letter, or anywhere else, does the United States represent that the

Ackermans may delay filing a claim for refund.  More importantly, the letter nowhere suggests

that the United States is reconsidering the application of the accuracy-related penalty to the

Ackermans.  It only states that the amount of the deficiency, and therefore penalty, may change

when the United States obtains complete information about the Ackermans' tax returns.

    This case is unlike those cited by the Ackermans in support of their estoppel argument.

In *Howard Bank v. United States*, 759 F. Supp. 1073, 1080 (D. Vt. 1991), the court found that

based on a conversation with the IRS within the two year statute of limitations period, the

plaintiff reasonably believed that the IRS was reconsidering its claim for a refund.  There was no

such reasonable belief that the IRS was reconsidering the application of the accuracy penalty to

the Ackermans here.  In both *Heath v. United States*, 1979 WL 3922, at *1 (Ct. Cl. January 12,

1979) and *Miller v. United States*, 500 F.2d 1007, 1008-09 (2d Cir. 1974), the plaintiffs received

a letter containing a definite, if mistaken, statement that they had two years from the date of that

letter in which to file suit.  Finally, in *Se. Bank of Orlando v. United States*, 676 F.2d 660, 664

(Ct. Cl. 1982), the court found that there was a formal reconsideration of the substance of the

24

plaintiffs' claims in a new letter, something that did not occur here.  Because the Ackermans

failed to file their claim for a refund on the grounds that the accuracy-related penalty was

erroneously applied to them within six months of the January 2006 notice, the Court grants the

United States' motion to dismiss *Ackerman IV*.

**C.**     ***Ackerman III* - Claim for Refund Based on Failure-To-Pay Penalties**

In *Ackerman III*, the Ackermans claim their right to a refund of failure-to-pay penalties

assessed because they did not pay their January 2006 tax liability within ten days.  The

Ackermans assert defenses of reasonable cause and lack of willful neglect to these penalties.  The

United States moves for partial dismissal of this claim.  The principal question before the Court

on this claim is whether the Ackermans are barred from bringing this claim in federal court for

the tax years in which they have already filed a petition in Tax Court despite the fact that the

petition did not include any claim with regard to these failure-to-pay penalties.  Once again, the

Court must consider whether a certain overpayment or refund claim is "attributable to partnership

items."

The United States argues that the Ackermans previously chose to file petitions with the

Tax Court addressing their joint income tax liability for tax years 1997, 1998, 2000, and 2002,

and therefore there is no subject matter in this Court under I.R.C. section 6512(a).  The United

States argues that the Tax Court's jurisdiction, which precludes this Court's jurisdiction, extends

to the entire subject of the correct tax for a particular year, including issues not presented to the

Tax Court.

The Ackermans rejoin that the United States ignores the exception to section 6512(a)

contained in subparagraph four, which excepts subsequent refund actions in district court for

"overpayments attributable to partnership items."  Courts have specifically held that this includes a taxpayer's subsequent claim for refund of substantive affected items, according to the Ackermans.  Further, the Ackermans argue that the items determined in the SMP case are partnership items and that their claims for refund for overpayments that resulted from adjustments to their tax liabilities made in accordance with the SMP case, in this case failure-to-pay penalties, are therefore attributable to partnership items.  The Ackermans also contend that there is a question as to whether the failure-to-pay penalties actually "relates" to any overlapping tax year because they arose factually at the time their payment of the amounts set out in the 2006 notice came due and this has no relation to the underlying tax years at issue in the pending Tax Court case.  Finally, they argue that the Tax Court does not even have jurisdiction to consider the penalties as they relate to partnership items.

The United States replies that the penalty at issue in *Ackerman III* is a failure-to-pay penalty for failure to timely pay the tax assessed in January 2006 and is not an "affected item" of any type.  The failure-to-pay penalty, the United States argues, is in no way dependent on any SMP partnership item, but depends on the Ackermans' decision, a decade after the SMP decision, to not promptly pay, and that the penalty would not exist had the Ackermans timely paid.  Neither its existence nor its amount is dependent on any partnership item, according to the United States.

Section 6512(a) states:

If the Secretary has mailed to the taxpayer a notice of deficiency under section 6212(a) . . . and if the taxpayer files a petition with the Tax Court . . . no credit or refund of income tax for the same taxable year . . . to which such petition relates . . shall be allowed or made and no suit by the taxpayer for the recovery of any part

26

of the tax shall be instituted in any court except– . . . (4) As to overpayments attributable to partnership items, in accordance with [TEFRA].

26 U.S.C. § 6512(a). The Court is therefore faced with a similar question to that faced in

*Ackerman IV*: are the alleged overpayments of the failure-to-pay penalty "attributable to

partnership items"? In this case, the failure-to-pay penalty stems from the Ackermans' failure to

pay their January 2006 tax bill timely. The United States is correct that had the Ackermans paid

their bill timely, there would be no failure-to-pay penalty; the penalty exists because they did not

timely pay their tax bill. This is different from the accuracy-related penalties in *Ackerman IV* that

exist solely because of the adjustment to a partnership item. On the other hand, the existence of

the tax bill itself is certainly attributable to partnership items in that if there were there no

partnership proceeding, there would have been no adjustment to the Ackermans' taxes, no

required payment and therefore no failure to pay. The Court is therefore faced with the question

of if and when a penalty that results from a TEFRA action is no longer attributable to a

partnership item.

Facing a similar line drawing exercise, the Second Circuit opined that:

At some level of generality, of course, most refund actions involving the taxation of a partnership can be described as seeking a refund "attributable to partnership items." In the absence of partnership income or loss, both partnership items, there would be no taxes in the first place . . . . But such a reading of the phrase "attributable to partnership items" would make most or all refund claims arising out of the taxation of partnerships, even those entirely about and entirely dependent on facts peculiar to a single partner, claims for refunds "attributable to partnership items." To blur or erase in that manner the distinction between proceedings involving partnership items and those involving nonpartnership items would be contrary to the system of separate treatment of partnership and nonpartnership issues Congress established by enacting TEFRA.

*Monti v. United States*, 223 F.3d 76, 82 (2d Cir 2000).  The Court is persuaded that it must draw a line and that the alleged overpayment of failure-to-pay penalties in this case is not attributable to any partnership item because they are not imposed because of an adjustment to a partnership item but because the Ackermans failed to timely pay their January 2006 tax bill.  This is not the only reason why the Court's holding in *Ackerman III* is consistent with the Court's holding in *Ackerman IV*.  Resolution of *Ackerman III* is *entirely* dependent on facts peculiar to the Ackermans, i.e. why they did not pay their January 2006 tax bill.  By contrast, the accuracy-related penalties discussed in *Ackerman IV* stemmed directly from the adjustment to a partnership item, and consideration of even partner-level defenses would necessarily require an inquiry into the partnership-level proceedings where the application of the penalty was made.

The Ackermans further argue that "there is some question whether the late payment penalties actually 'relate' to any overlapping tax year pending in Plaintiffs' Tax Court proceeding."  Pls.' *Ackerman III* Opp'n at 54.  The United States does not respond to this argument.  The relevant wording of section 6512(a) is "if the taxpayer files a petition with the Tax Court . . . no credit or refund of income tax for the same taxable year . . . to which such petition relates . . . shall be allowed [and suit is barred]."  Here, the Ackermans request a refund for late payment penalties related to tax years 1997 through 2003.  *See Ackerman III* Compl. ¶ 8. They had previously filed a petition in Tax Court related to tax years 1997, 1998, 2000 and 2002. Therefore, their request for a refund for years 1997, 1998, 2000, and 2002, are for the same taxable year to which their Tax Court petition relates and jurisdiction is barred by section

6512(a).[5]  The Court therefore grants the United States' partial motion to dismiss *Ackerman III*

insofar as it requests a refund for tax years 1997, 1998, 2000 and 2002.

### III.  CONCLUSION

For the foregoing reasons, the United States' motions to dismiss *Ackerman I* and

*Ackerman IV*, and to partially dismiss *Ackerman III* are granted.  Appropriate orders accompany

this memorandum opinion.

---

[5]  The Court need not address the Ackermans' argument that the Tax Court would not have jurisdiction over their failure-to-pay penalty claims because it finds that the failure-to-pay penalties do not relate to partnership items.  Moreover, plaintiffs need not fear that identical determinations will be made in multiple forums because the facts and legal analysis underlying their defenses to their failure to timely pay their 2006 tax bill are unrelated to the TEFRA partnership-level proceeding.